IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Laurie Long, | ) | Civil Action No. 3:06-1199-JFA-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Wray Automotive, Inc., and | ) | **REPORT AND RECOMMENDATION** |
| Wilmor Harold Wray, Jr., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Laurie Long ("Long"), originally filed this action in the Court of Common Pleas for Richland County. It was removed to this Court on April 20, 2006. The complaint alleges that Long's former employer, Wray Automotive, Inc. ("Wray"), discriminated against her because of her gender[1] in violation of Title VII, 42 U.S.C. § 2000e-1, et seq.[2] The parties appear to agree that Long's remaining claims are her Title VII claims against Wray for being subjected to a hostile work environment, retaliation, and constructive discharge. Wray filed a motion for summary judgment on February 1, 2007. Long filed a response on March 16, 2007. Wray filed a reply on March 21, 2007. Additionally, Wray filed a motion for partial summary judgment relating to Long's claim for damages on March 16, 2007. Long filed a response on April 12, 2007. Wray filed its reply on April 19, 2007.

---

[1] The complaint also alleges state claims against Wilmor Harold Wray, Jr. ("Wray, Jr."). However, those claims were dismissed by Order of the Honorable Joseph F. Anderson, Jr. entered December 8, 2006.

[2] Pretrial matters in this case were automatically referred to the undersigned pursuant to Lcoal rule 73.02(B)(2)(g), D.S.C.

**Standard for Summary Judgment**

When no genuine issue of any material fact exists, summary judgment is appropriate. <u>Shealy v. Winston</u>, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. <u>Id.</u> Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. <u>Ballinger v. North Carolina Agric. Extension Serv.</u>, 815 F.2d 1001, 1005 (4th Cir.), <u>cert. denied</u>, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "'the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> <u>fact</u>.'" <u>Id.</u> (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." <u>Id.</u> at 718-19 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations

to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [see Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corporation, 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Services Co., 875 F. Supp. 1115 (D.Md. 1995).

## Facts

Long and her 17 year old daughter, Yvonne Brunson ("Brunson") both worked for Wray. Brunson was sexually harassed by Wray, Jr., and she filed a case which has been settled.[3] Long's claims grow out of the same events as those of her daughter.

The facts, either undisputed, or according to the plaintiff as the non-moving party, with all reasonable inferences therefrom, to the extent supported by the record, are as follows:

1. Wray operates two automotive dealerships, Wray Mazda and Wray Volkswagen, in Columbia. (Wray, Sr. Aff. ¶ 1).
2. Harold Wray, Sr. ("Wray, Sr.") is the owner of Wray Mazda.
3. Wray, Jr. is the vice-president of Wray and supervises the day to day operations of the business (Wray, Jr., Aff., ¶ 1).

---

[3]See Brunson v. Wray Automotive, Inc., 3:05-146-JFA-JRM.

4.  Long was employed by Wray as a finance clerk. (Long Aff., ¶ 3).

5.  Brunson, Long's daughter, was employed by Wray as a receptionist (Brunson Aff., ¶¶ 3 and 4).

6.  Brunson, then 17 years of age, was sexually harassed by Wray, Jr. between February 14 and February 23, 2004. (Brunson Aff., ¶¶ 5 and 10).

7.  The sexual harassment included unwelcome kissing, touching, telephone calls, and a note. (Brunson Aff., ¶¶ 6-9).

8.  Brunson told Long of the sexual harassment by Wray, Jr. (Long Aff., ¶ 5).

9.  On February 23, 2004, Long and Brunson met with Wray, Sr. and Lorraine Lester ("Lester"), Wary's Comptroller. (Long Aff., ¶ 6; Brunson Aff., ¶ 12; (Wray, Sr. Aff., ¶ 4; Lester Aff., ¶ 7).

10. In response to the allegations of sexual harassment, Wray, Sr. offered to move Brunson to a different location so that she would not have contact with Wray, Jr. (Long Aff., ¶ 14).

11. February 23, 2004 was Brunson's last day at Wray (Brunson Aff., ¶ 13).

12. It was agreed that Long would have February 24, 2004 off from work. (Long Dep., 49; Wray, Sr. Aff. ¶ 4; Lester Aff., ¶ 8).

13. Long returned to work on February 25, 2004 and worked that day as well as February 26 and 27. (Long Dep., 50; Lester Aff., ¶ 8).

14. During this three-day period (February 25-27, 2004), Long was orally criticized for poor job performance by Bridgette Benso ("Benso") and Lester (Pl. Dep., 54-56).

15. Long was not scheduled to work on Sunday, February 28, 2004.

16. On March 1, 2004, Long met with Lester. It was agreed that Long would have the week off as paid leave and that Long would return to work on March 8, 2004. (Long Dep. 50; Lester Aff., ¶ 9).

17. On March 2, 2004, Lester wrote Long a letter memorializing their conversation and assuring her that her job was not at risk and offering to assist her in obtaining counseling if she felt it was needed. (Long Aff., ¶ 11 and Ex. A).

18. Long did not report to work on March 8.

19. On March 15, 2004, Lester wrote Long that she was entitled to 12 weeks of unpaid leave under the Family Medical Leave Act ("FMLA") beginning that day. The letter explained the FMLA process and indicated that Long's medical insurance would be paid and that she would be required to submit periodic status reports. (Lester Aff., ¶ 12 and Ex. B).

20. Lester again wrote Long concerning FMLA benefits on March 23, 2004. (Lester Aff., ¶ 12 and Ex. C).

21. On November 11, 2004, Julie-Ann Jacobs, Wray's Human Resources Director, wrote Long informing her that she must provide information on her ability to return to work by November 19, 2004 or she would be considered to have voluntarily resigned. (Lester Aff., ¶ 14 and Ex. D).

22. Long did not provide the requested information and did not return to work. (Lester Aff., ¶ 15).

**Discussion**

A.   Motion for Summary Judgment

Long's claims are based on the events of February 23 through February 27, 2004. In her deposition testimony, Long described the atmosphere at Wray during this period as "tense." (Pl. Dep. 78).

It appears that Brunson told two people of the advances of Wray, Jr.–her mother and her boyfriend. Long and Brunson decided to surreptitiously gather evidence of Wray Jr.'s misdeeds. Brunson's boyfriend apparently told another Wray employee of the situation and Wray, Sr. became aware of the "rumor." On the morning of February 23, 2004, Brunson went to work and Long went to see a lawyer. Wray, Sr. and Lester called Brunson in for a meeting. A Wray employee telephoned Long and told her what was happening. Long came to Wray and joined the meeting. At that point all the cards were on the table. Long and Brunson left work after the meeting. Brunson did not return. Long returned on February 25 and did not work after February 27. During this period, Long had no contact with Wray, Jr. or Wray, Sr. No one was rude to her. Rumors circulated and Long felt uncomfortable. She was criticized by Benso and Lester.

1.   Sexual Harassment

Title VII makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions or privileges of employment on the basis of sex. 42 U.S.C. § 2000e-2(a). This includes creating or allowing a hostile work environment based on gender. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 73 (1986). To prove a hostile work environment, the plaintiff must show that: (1) she was harassed because of her sex; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an

abusive working environment; and (4) some basis exists for imputing liability to the employer. Howard v. Winter, 446 F.3d 559, 565 (4th Cir. 2006); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc).

In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment in violation of Title VII, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 787 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22(1993)).  Actionable sexual harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21.  Title VII does not reach "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex... [I]t forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75  (1998), citing, Harris 510 U.S. at 21.

Among the circumstances examined are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. at 21."While we do not approve of [the employer's] apparent willingness to offend and provoke employees with his ambiguously sexual innuendos, Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace."  Id. at 754; see also Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir.1995) ("The concept of sexual

7

harassment is designed to protect working women from the kind of male attentions that can make the workplace hellish for women...It is not designed to purge the workplace of vulgarity.").

Long has presented no evidence that her workplace was "permeated with discriminatory intimidation, ridicule, and insult." There is nothing in the record to suggest that any offensive action or language was directed at her. The only criticisms about which she complains were made by women, Benso and Lester. Long has not shown that these comments were made because of her gender.

Long's sole argument is that she was subjected to a sexually hostile work environment as soon as she learned that Wray, Jr. had made sexual advances toward Brunson. Long presents a theory of pure "second hand harassment" conceding that she "was not actually sexually assaulted and harassed by Harold Wary, Jr." (Pl. Mem., 5). The undersigned concludes that while this experience was undoubtedly traumatic for Long, it is not actionable under Title VII.

Title VII forbids discrimination against an employee by her employer. Generally, an employment discrimination plaintiff is without standing to redress discrimination directed toward others. "An individual plaintiff in a private, non-class action alleging employment discrimination is not litigating common questions of fact, but the discrete question of whether the employer discriminated against the plaintiff in a specific instance." Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 761 (4th Cir. 1998), vacated on other grounds, 527 U.S. 1031 (1999). In Honor v. Booz-Allen Hamilton, Inc., 383 F.3d 180, 191 (4th Cir. 2004), the court affirmed summary judgment in a case alleging a racially hostile work environment indicating that such a claim must be based on "personal racial attacks." The plaintiff, an African-American, complained that a white supervisor created a hostile work environment because the supervisor sought to derail the careers of other

African-Americans and resisted attempts to recruit other African-American employees. The court held that summary judgment was appropriate because no racially offensive conduct was directed at plaintiff himself. Id. at 190. Here, no sexually offensive conduct was directed toward Long.

Plaintiff cites several cases in support of her second hand harassment argument. Review of these cases shows that the courts have held that harassment toward others may be relevant in determining whether a hostile "environment" existed. For instance, Long quotes (Pl. Mem. 5) the following from Spriggs v. Diamond Auto Glass, Inc., 242 F.3d 179 (4th Cir. 2001):

> Although Diamond contends that conduct targeted at persons other than Spriggs cannot be considered, its position finds no support in law. We are, after all, concerned with the "environment" of workplace hostility, and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and his supervisor.

Spriggs. 242 F.3d at 184. However, in Spriggs, an African-American employee was exposed "on a 'continuous daily' basis to [a white supervisor's] racist comments concerning African Americans in general." Id. The court held that in the totality of these circumstances, a reasonable jury could find that a hostile work environment existed even though none of the racial epithets were directed at the plaintiff.

Long also cites Moser v. Indiana Dep't of Corrs., 406 F.3d 895, 903 (7th Cir. 2005). In Moser some sexually offensive comments were directed at plaintiff. Despite this finding, the court affirmed summary judgment in favor of the defendant "because, on this record, a reasonable person likely would not have found the ...work environment to be hostile within the meaning of Title VII." In doing so, the court considered the argument of the plaintiff that the district court did not place sufficient emphasis on comments the supervisor made to other employees. The court commented that it "has considered such 'second-hand harassment, although relevant, to be less objectionable

than harassment directed at the plaintiff.'" Id. In other words, comments made to others are relevant in determining whether an abusive "environment" existed.

Last, Long cited Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986) which she describes as a "second hand harassment" case. (Pl. Mem., 6). A review of the facts in Meritor shows that it is not a second hand harassment case. The facts in Meritor more closely resemble the facts in this case as applied to Brunson. Long is apparently referring to a factual pattern found in a case cited in Meritor, Rogers v. EEOC, 406 U.S. 957 (1972). In Rogers, the Fifth Circuit held that a Hispanic complainant could establish a Title VII violation by proving that the employer created a hostile work environment for employees by continuously giving discriminatory service to Hispanic customers. Again, the court was commenting on the requirement of showing that the "environment" was hostile.

Long has not shown that the environment at Wray was hostile. The actions of Wray, Jr. toward Brunson occurred in private. The fact that Long was "uncomfortable" (Pl. Dep. 77) after Wray, Jr. was exposed does not constitute a hostile work environment.

    2.    Retaliation

Traditionally in the Fourth Circuit, a plaintiff could establish a prima facie case of retaliation by showing: (1) the employee engaged in protected activity; (2) the employer took some adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse activity. See Anderson v. G.D.C., Inc., 281 F.3d 452, 458 (4th Cir. 2002); Von Gunten v. Maryland, 243 F.3d 858, 863 (4th Cir. 2001), abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White, ___ U.S. ___, 126 S.Ct. 2405 (2006); and Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994). If the plaintiff succeeds in establishing a prima

facie case, the burden shifts to the defendant to proffer a legitimate, non-retaliatory reason for the adverse action. Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. at 524. Then the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual, and that the adverse action was imposed because the plaintiff engaged in protected activity. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

Under this formulation, an adverse employment action "includes any retaliatory act or harassment if, but only if, that act or harassment results in an adverse effect on the 'terms, conditions, or benefits' of employment." Von Guten v. Maryland, 243 F.3d at 866, quoting Mundy v. Waste Mgmt. of North America, Inc., 126 F.3d 239, 243 (4th Cir. 1997).

In Burlington Northern & Santa Fe Ry. Co., the Supreme Court rejected the Fourth Circuit's requirement that an employee must prove that he suffered an adverse employment action to establish a prima facie case of retaliation. The court held:

> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm...[T]he Courts of Appeals have used differing language to describe the level of seriousness to which this harm must rise before it becomes actionable retaliation...In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Id. at 2414-15 (internal quotation marks and citations omitted). In explaining this new standard, the Court stated it used the term "materially adverse" "to separate significant from trivial harms" noting that "normally petty slights, minor annoyances, and simple lack of good manners" would be of insufficient harm. Id. The term "reasonable employee" was used to provide an "objective standard [that] is judicially administrable." Id. The new standard was stated in "general terms because the

significance of any given act of retaliation will often depend upon the particular circumstances." Id.

In the present case, Wray concedes for the purpose of summary judgment that Long engaged in protected activity when she protested the treatment of Brunson by Wray, Jr. at the meeting with Wray, Sr. on February 23, 2004. Long conceded in her deposition that any retaliation that occurred happened between that date and February 27, 2004, her last day of physical presence at Wray (Pl. Dep. 53-54). Wray does not contest the causal connection prong of the prima facie case due to this temporal proximity. See Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007).

Wray argues in its reply brief that Long cannot show that she suffered a materially adverse action as defined in Burlington Northern & Santa Fe Ry. Co. v. White. The only two employment actions cited by Long are the reprimands given to her by Benso and Lester between February 25 and 27, 2004.[4] Apparently, these reprimands were oral and there is no written memorialization. Neither the affidavits of Long nor Lester touch on this issue. The only evidence in the record that addresses the reprimands is Long's deposition testimony, and it is unclear.

Long had a conversation during the three-day period with Benso in which Benso told her that her "job performance was poor." (Pl. Dep. 54 and 63). Benso also advised Long of a new procedure whereby Long was "to start pulling the stipulation sheets for the finance managers." (Id. 54). However, it does not appear that Long considered this to be a criticism of her work. Long thought

---

[4] In its original memorandum, Wray argued that Long stated in her EEOC charge that these reprimands occurred prior to February 23, 2004, and therefore were not actionable. However, the charge is not part of the record, and in the light most favorable to plaintiff, the reprimands occurred after the meeting of February 23.

this process would "create a mountain of confusion," but she did not tell Benso that she would not perform the new procedure. (Id. 58).

Also, during the three-day period, Lester spoke with Long about handling checks returned for insufficient funds ("NSF checks"). Long considered this to be criticism of her handling of the NSF checks, when actually that task had been reassigned to another employee. (Id. 55). Long described the conversation as "nitpicking." (Id.).

The undersigned concludes that Long has failed to establish a prima facie case of retaliation because she has not shown that Wray took a materially adverse action against her. The only two actions about which Long complains are the conversations she had with Benso and Lester which she felt were unfair criticism. These two conversations are not actions which would deter a reasonable employee from initiating a charge of discrimination. Objecting to discriminatory treatment does not immunize an employee from all criticism. See Parsons v. Wynne, 221 Fed. Appx. 197, 199, 2007 WL 731398, *1 (4th Cir. 2007) (unpublished) (adverse performance evaluation and change in work schedule not materially adverse actions); Washington v. Norton, 2007 WL 1417290, *4 (N.D.W.Va. 2007) ("Reprimanding an employee for unprofessional conduct or warning an employee about poor performance by letter...would not dissuade a worker from filing protected complaints"); Gordon v. Gutierrez, 2007 WL 30324, *9 (E.D.Va. 2007) ("circumstances of verbal counseling...would not discourage a reasonable employee"); and Zackrie v. Lockheed Martin, Corp., 2006 WL 2849767, *8 (D.Md. 2006) (documenting areas for improvement and tracking absences insufficient).

    3.    Constructive Discharge

An employee must show that her employer took "deliberate" action to make the employee's working conditions "intolerable" in an effort to force the employee to resign. Heiko

v. Colombo Savings Bank, 434 F.3d 249, 262 (4th Cir. 2006); Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995); Amirmokri v. Baltimore Gas and Elec. Co., 60 F.3d 1126, 1132 (4th Cir. 1995); Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985), cert. denied, 475 U.S. 1082 (1986). Deliberateness exists when the actions of the employer were "intended by the employer as an effort to force the employee to quit." Burns v.AFF-McQuay, Inc., 96 F.3d 728 (4th Cir. 1996), cert. denied, 520 U.S. 1116 (1997). Such intent can be inferred from actual or circumstantial evidence. See Holsey v. Armour & Co., 743 F.2d 199, 209 (4th Cir.1984), cert. denied, 470 U.S. 1028 (1985). Deliberateness is also shown if company personnel know of the untenable conditions, and take no steps to remedy the situation. Id. "Intolerable" working conditions are assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign. Burns, 96 F.3d at 733, EEOC v. Clay Printing Co., 955 F.2d 936, 944 (4th Cir. 1992). If the employee meets this burden, she then must show that the conduct about which she complains was motivated by discriminatory animus. Taylor v. Virginia Union University, 193 F.3d 219 (4th Cir. 1999); Honor, 383 F.3d at 187 (employer's deliberateness must "be motivated by racial bias").

Long's claim for constructive discharge fails for the same reasons as her claims for a sexually hostile work environment and retaliation. Long appears to allege that she was constructively discharged because of her gender (Complaint, ¶ 17) and in retaliation for opposing Wray's discriminatory actions (Complaint, ¶ 14). As discussed above, Long does not assert that any action was taken against **her** because of **her** gender. She claims only second-hand harassment. She has not shown retaliation. Therefore, Long's claim for constructive discharge necessarily fails. Further, there is nothing in the record to show that any of Wray's actions were taken in an effort to

force Long to resign.  To the contrary, on March 2, 2004, Lester wrote Long and told her that her job was not at risk and that Wray wished to have "the entire matter worked out so that both you and Yvonne [Brunson] can continue working with the Company," that she was given a week of paid leave, and that Wray would pay the expense of any counseling not covered by her health insurance (Lester Aff., Ex. A).  Last, as with Long's claim for retaliation, the criticisms of Benso and Lester did not make Long's working conditions intolerable.

    B.    Motion for Partial Summary Judgment

In its motion for partial summary judgment, Wray seeks to limit Long's damages for emotional distress, elevated blood pressure, and back pay.  It is recommended that this motion be denied without prejudice.  These matters are better left for trial, if necessary.

### Conclusion

Based on a review of the record, it is recommended that defendants' motion for summary judgment be granted and that defendants' motion for partial summary judgment be denied without prejudice.

    Respectfully submitted,

    s/Joseph R. McCrorey
    United States Magistrate Judge

August 15, 2007
Columbia, South Carolina